**Tagged opinion**



**ORDERED in the Southern District of Florida on February 07, 2007.**

**Robert A. Mark, Judge
United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

```
_____
                               )
                               )
In re:                         )    CASE NO.   06-15240-BKC-RAM
                               )    CHAPTER    7
PATRICIO ALBERTO QUEZADA,      )
                               )
                               )
           Debtor.             )
                               )
_____)
```

**MEMORANDUM OPINION AND ORDER (1)
OVERRULING OBJECTION TO EXEMPTION; AND
(2) DENYING TRUSTEE'S REQUEST FOR AUTHORITY
<u>TO SELL HOMESTEAD TO PAY DOMESTIC SUPPORT OBLIGATION</u>**

In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCA"), Congress added several provisions benefitting creditors holding claims for debts in the nature of alimony, maintenance and support. Perhaps the most significant change is that these creditors, holders of debts now defined in 11 U.S.C. §101(14A) as domestic support obligations ("DSOs"), have first priority under new §507(a)(1). In addition,

§522(c)(1) has been amended to provide that property deemed exempt in the bankruptcy case will remain liable for DSO debts even if the exempt property would not be reachable to satisfy these claims under applicable state law.

The two questions presented in the pending contested matters in this case arise from these changes. First, does amended §522(c)(1) create a valid basis for an objection to exemptions by the trustee or a DSO creditor? Second, do the changes in §522(c)(1) and §507 authorize a trustee to administer exempt property for the benefit of a DSO creditor? For the reasons that follow, this Court answers no to both questions.

### **Factual and Procedural Background**

Patricio Alberto Quezada (the "Debtor") filed a voluntary Chapter 7 petition on October 16, 2006 (CP# 1). Marcia T. Dunn is the duly appointed Chapter 7 trustee (the "Trustee"). The Debtor scheduled his home located at 1620 S.W. 102nd Avenue, Miami, Florida (the "Home") with a value of $424,629 and an existing mortgage of $89,932 resulting in over $334,000 in equity. The Home is scheduled as exempt on Schedule C.

The Debtor lists Nys Otda (presumably his former spouse) as a general unsecured creditor with a debt described as "family support obligation" in the amount of $19,228. Nearly the identical amount, $19,262.51, is listed in Schedule E as a back child support payment owed to "New York Scu." This Opinion and Order does not determine the amount and priority of these claims.

However, for purposes of this Opinion, the Court is assuming that one or both of these creditors hold DSO claims.

On December 19, 2006, the Trustee filed her Objection to Claimed Homestead Exemption, Request for Authority to Sell Homestead to Pay Outstanding Domestic Support Obligations, and Motion to Compel Turnover of Documents (CP#s 20, 21) ("Objection to Exemption" and "Motion to Sell Homestead"). The Trustee asserts that the Home is not exempt to the extent of the outstanding DSO debts and that she has the authority to sell the Home to pay outstanding DSO debts. The Court conducted a hearing on the Objection to Exemption and Motion to Sell Homestead on January 16, 2007.

## Discussion

As described in the introduction, BAPCPA included revisions to §522(c). In relevant part, that section provides:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose... before the commencement of the case, except -
>
> > (1) a debt of a kind specified in [§523(a)(1) or §523(a)(5)] (in which case, notwithstanding any provision of applicable non-bankruptcy law to the contrary, <u>such property shall be liable for a debt of a kind specified in section §523(a)(5))</u>....

(Emphasis added.)

Section 523(a)(5) as amended, excepts from discharge any debt for a domestic support obligation. Therefore, under

3

§522(c)(1), debts for DSOs may be enforced against exempt property, whether or not the underlying support obligation could be enforced against that property under applicable state law. The issues, as framed earlier, are (1) whether either the trustee or a DSO creditor can object to the Debtor's exemption to the extent of an allowed DSO claim; and (2) whether a trustee may administer exempt property to pay DSO claims.

### A.   Section 522(c)(1) Does Not Provide for Disallowance of an Exemption

The first issue can be disposed of easily. Section 522(c)(1) renders exempt property liable for certain tax debts and DSO debts; it does <u>not</u> limit a debtor's right to claim all exemptions otherwise available under §522. <u>In re Ruppel</u>, 2007 WL 108941, *2 (Bankr. D.Or. 2007); <u>In re Covington</u>, 2006 WL 2734253, *2 (Bankr. E.D.Cal. 2006). Therefore, the Trustee's Objection to Exemption will be overruled.

### B.   The BAPCPA Amendments to §§507(a)(1)and 522(c)(1) Do Not Authorize a Trustee to Administer Exempt Property

The Trustee offers both a statutory and policy argument in support of her Motion to Sell Homestead Property. She first points to the new administrative priority afforded DSO claims in §507(a)(1). Under new §507(a)(1)(A), DSO claims now have first administrative priority. To protect a trustee's ability to recover his or her administrative expenses for administering assets to pay these now highest priority DSO claims, Congress added §507(a)(1)(C) which provides, in relevant part,

4

> If a trustee is appointed . . . the administrative expenses of the trustee . . . shall be paid before payment of [DSO claims], to the extent that the trustee administers <u>assets that are otherwise available for the payment of [DSO claims]</u>.

(Emphasis supplied.)

Exempt assets are assets liable for the payment of DSO claims under §522(c)(1). Therefore, the Trustee argues that exempt assets are "assets that are otherwise available for payment of DSO claims" and thus, within the scope of assets Congress intended trustees to administer under §507(a)(1)(C). If Congress did not intend for trustees to administer exempt assets to pay DSO claims, the argument continues, it could have used the common phrase "property of the estate" in §507(a)(1)(C) instead of this apparently broader phrase "assets otherwise available."

The Court has not found any cases adopting the Trustee's argument, but this statutory argument has found support in at least one published article, Dennis G. Bezanson & Gary B. Rudolph, <u>The "Super-Priority" of a "Domestic Support Obligation" ("DSO"): The Trustee as Liquidator of Exempt Property for the Benefit of DSO Claimants; and Other DSO Issues</u>, Journal of National Association of Bankruptcy Trustees, Vo. 22, No. 1, at 24 (2006) ("NABTalk"). In addition to the statutory argument just discussed, the NABTalk authors cite to §724(b). They argue that property subject to tax liens may be sold even though, absent subordination of a tax lien, the estate would have no equity in the property. These sales are permissible if subordination of

5

the tax lien to third priority under §724(b)(3) would free up funds to pay administrative expenses with higher priority under §724(b)(2).  See In re Laredo, 334 B.R. 401 (Bankr. N.D.Ill. 2005).  The authors find this analogous to the sale of exempt property:

> Thus, the authors would submit §507(a)(1)(C) when read in conjunction with §506(c) and §724(b) where "benefit to the estate" may either not have to exist in the classic sense, or, benefit to the estate exists in payment of administrative costs and the benefit to the DSO claimant.

NABTalk, supra, at 28.

The Court has carefully considered the Trustee's arguments and the additional arguments in the NABTalk article.  Although not frivolous, these arguments do not penetrate the statutory roadblock of §704(a)(1) which precludes a trustee from selling exempt property.  That section directs the trustee to "collect and reduce to money the property of the estate...." (Emphasis added.)  On the filing date of a bankruptcy case, property of the estate includes exempt property.  However, once a debtor's claim of exemption is allowed, exempt property is considered withdrawn from the estate.  Ruppel, 2007 WL 108941, at *1 (citing S&C Home Loans, Inc. v. Farr (In re Farr), 278 B.R. 171, 177 (B.A.P. 9th Cir. 2002)); Covington, 2006 WL 2734253, at *2.

The Debtor's Home in this case was listed as exempt and that exemption has been allowed.  The homestead exemption under Florida law protects the entire value of the Home.  Although the

6

Home may be subject to execution by a DSO creditor under §522(c)(2), it is no longer property of the estate. Thus, the Home cannot be sold by the Trustee since administration of totally exempt property is outside the scope of the Trustee's authority under §704.

The Trustee's §522(c)(1) and §507(a)(1)(C) argument is colorable but not convincing. Congress did use the term "assets otherwise available" for payment of DSO claims in §507(a)(1)(C) and the Home is an asset liable for and hence "available" for payment of DSO claims under §522(c)(1). Still, this choice of words in §507(a)(1)(C) is not express authority for a trustee to administer exempt property. Besides the fact that Congress could have, but did not amend §704(a), section 507, which sets forth the priority of distributions, has to be read in conjunction with the distribution provisions in §726 which implement the §507 priorities. Section 726, titled "Distribution of property of the estate," provides in relevant part,

> (a) Except as provided in §510 of this title, <u>property of the estate</u> shall be distributed –
>
> (1) first, in payment of claims of the kind specified in, and in the order specified in, <u>§507 of this title</u>....

(Emphasis added.)

As the foregoing analysis shows, §507(a)(1)(C) cannot be read as a grant of authority for a trustee to liquidate exempt assets when §507 itself simply provides the priorities for

7

distribution of property of the estate. <u>Ruppel</u>, 2007 WL 109941, at *2; <u>Covington</u>, 2006 WL 2734253, at *2-*3 (also noting the absence of any §522(c)(1) pre-BAPCPA cases authorizing a trustee to liquidate exempt property to pay non-dischargeable tax claims).

The NABTalk authors' analogy to §724 is unpersuasive. Cases like <u>Laredo</u>, cited in the article, support a trustee's right to sell property even when the liens exceed the value. That authority, however, arises because the subordination of the tax claims under §724(b)(3) provides value to the estate. <u>Laredo</u>, 334 B.R. at 415.

Contrary to the authors' contention, the issue here is not analogous. The trustee in <u>Laredo</u> was still administering property of the estate. The issue was not, like here, authority to administer under §704, but rather whether property otherwise appropriate for abandonment based on lack of equity, should nevertheless be administered to realize the value arising from the subordination of the tax lien.[1]

### C. <u>Policy Issues</u>

The Trustee also offered a policy argument to support

---

[1] <u>Laredo</u> did include a §522(c)(1) issue. The debtors sought payment of their $15,000 homestead exemption from the sale proceeds. The Court found that under §522(c)(1), the debtors' homestead exemption claim was inferior to the federal tax lien. That ruling has no direct relevance to the authority to sell issue presented here. As noted in the text, only a portion of the property sold by the <u>Laredo</u> trustee was exempt.

administration of exempt assets to pay DSO claims.  New §522(c)(1) creates a federal right entitling DSO creditors to execute against exempt assets even if those assets would be protected from execution under state law.  Although, in theory, a state court judge is perfectly capable of applying federal law, in practical terms, it appears awkward for a DSO creditor to seek relief in state court to pursue assets which are exempt from execution under state law.

These potential practical problems have no effect on the statutory analysis which controls this decision.  Moreover, the lack of <u>authority</u> for a trustee to administer exempt property does not mean that the bankruptcy court lacks <u>jurisdiction</u> if a DSO creditor seeks to enforce a DSO claim against exempt property in the bankruptcy court.  Under 28 U.S.C. §1334(b) the district courts have "original but not exclusive jurisdiction of civil proceedings arising under title 11, or arising in or related to cases under title 11."  Section 522(c)(1) grants DSO creditors a federal right of action against exempt property.  This federal right trumps state law which may otherwise shield the asset from execution.  Since this federal right is provided in the Bankruptcy Code, a proceeding to enforce that right would be a proceeding arising under title 11, thus creating jurisdiction under §1334(b).  <u>See</u> <u>In re Toledo</u>, 170 F.3d 1340, 1345 ("Arising under" proceedings are matters invoking a substantive right created by the Bankruptcy Code).

The court has also considered policy implications not argued by the parties. Assume that a debtor has sufficient non-exempt assets to allow for full payment of a DSO claim and also has exempt assets which could satisfy the claim. Unsecured creditors would certainly want a trustee to pay the DSO claim from the exempt property thereby increasing the non-exempt assets available for distribution on their claims.

Under these circumstances, administration of exempt assets to pay DSO claims would benefit unsecured creditors in an asset Chapter 7. But is this good policy? This Court thinks not. The basic statutory scheme in the Bankruptcy Code promotes a debtor's fresh start by allowing the debtor to retain exempt property. This opinion has focused on the exceptions in §522(c)(1), but one should not overlook the fact that liability of exempt assets to satisfy nondischargeable DSO and tax claims is just that - an exception. The heart of §522(c) is the express protection of exempt assets from creditor claims during and after the case.

Congress specifically gave DSO claims the highest priority in amended §507(a)(1). That policy decision is clear. It is much harder, if not impossible, to find support for the proposition that Congress intended exempt property to be administered in an asset case to pay DSO claims in order to provide a benefit to the unsecureds. To the contrary, it would seem in direct conflict with the basic concept of exemptions to, in effect, be using exempt property to benefit unsecured

10

creditors.

### Conclusion

Without question, BAPCPA enhances the protections to and rights of DSO creditors. These rights include the right under §522(c)(1) to pursue assets claimed as exempt in a bankruptcy case to satisfy a DSO debt, even if the asset would be protected from execution under state law. Nevertheless, despite numerous other changes, Congress did not amend the provisions in Chapter 7 which set forth the scope of a trustee's duties and authority. As specifically set forth in §704(a) and §726, a trustee's authority is limited to the administration and distribution of property of the estate. Thus, the Debtor's fully exempt home, having been withdrawn from the estate, cannot be sold by the Trustee.

For the foregoing reasons, it is -

**ORDERED** as follows:

1. The Trustee's Objection to Exemption is overruled.
2. The Trustee's Motion to Sell Homestead is denied.

###

COPIES TO:

**SEE ATTACHED SERVICE LIST:**

**SERVICE LIST**

Marcia T. Dunn, Chapter 7 Trustee
P.O. Box 561507
Miami, Florida 33256

D. Jean Ryan, Esq.
RYAN & DUNN
P.O. Box 561507
Miami, Florida 33256
(Counsel for Trustee)

Michael A. Frank, Esq.
10 N.W. LeJeune Road
Suite 620
Miami, Florida 33126
(Counsel for Debtor)